\UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

JAZZ G.,[1]

                    Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

**DECISION AND ORDER**

6:19-CV-06340 EAW

―――――――――――――――――――――

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Jazz G. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 18), and Plaintiff's reply (Dkt. 19). For the reasons discussed below, the Commissioner's motion (Dkt. 18) is granted and Plaintiff's motion (Dkt. 13) is denied.

---

[1]     In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on March 31, 2015, and March 3, 2015, respectively.  (Dkt. 7-5 at 2-8, 9-14).[2]  In her applications, Plaintiff alleged disability beginning on September 5, 2014, due to depression and anxiety.  (*Id.* at 2, 9; Dkt. 7-6 at 5).  Plaintiff's applications were initially denied on May 13, 2015.  (Dkt. 7-3 at 4-14, 15-25).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John Costello, who issued an unfavorable decision on March 29, 2016.  (Dkt. 7-2 at 15-26).  Following a denial of review by the Appeals Council on July 26, 2016, Plaintiff sought review in this Court and the matter was remanded for further proceedings on May 30, 2017.  (*Id.* at 2-5; *Jazz G. v. Cmm'r*, 6:16-cv-06648-FPG).  On June 21, 2018, the Appeals Council remanded the case to the ALJ.  (Dkt. 7-10 at 5-10).  On January 22, 2019, a hearing was held before the ALJ in Rochester, New York.  (Dkt. 7-9 at 53-80).  On February 11, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 13-24).  After 60 days, the ALJ's determination became the Commissioner's final decision.  *See Marchand v. Comm'r of Soc. Sec.*, No. 17-CV-3252 (ENV), 2017 WL 2633511, at *2 (E.D.N.Y. June 14, 2017) ("[W]here, as here, the case has been remanded from federal court, the ALJ's subsequent decision on remand becomes the 'final decision' of the Commissioner unless the Appeals Council assumes jurisdiction of the case within 60 days after the ALJ's decision is issued." (quoting 42 U.S.C. §§ 404.984(d), 416.1484(d)).  This action followed.

---

[2]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to

- 4 -

demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

### I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2021. (Dkt. 7-9 at 15). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 5, 2014, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff had the following severe impairments: asthma, depression, and anxiety. (*Id.* at 16). The ALJ also found that Plaintiff's medically determinable impairments of cannabis abuse and obesity were non-severe impairments. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the requirements of Listings 3.0, 12.04, and 12.06 in reaching this conclusion. (*Id.* at 17-18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of work at all exertional levels but with the following additional limitations:

[Plaintiff] is limited to simple routine tasks, with low-stress work defined as work involving occasional decision-making. [Plaintiff] is limited to occasional interaction with co-workers and the general public. [Plaintiff] can have occasional exposure to respiratory irritants.

(*Id.* at 18-19).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 23).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of garment folder and marker II. (*Id.* at 23-24). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 24).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing: (1) the ALJ's RFC finding and assessment of medical opinion evidence was unsupported by substantial evidence; (2) the ALJ failed to further develop the record; and (3) new and material evidence submitted by Plaintiff is probative and should be admissible. (Dkt. 13-1 at 20-30). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A.   The ALJ's RFC Assessment is Supported by Substantial Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision."  *Id.*
However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's
RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586
(W.D.N.Y. 2018) (quotation omitted).  "[A]s a result[,] an ALJ's determination of RFC
without a medical advisor's assessment is not supported by substantial evidence."  *Dennis
v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).  In this case, the
ALJ relied on the opinions of primary care physician Pierre Jean Charles, M.D.,
consultative psychiatric examiner Yu-Ying Lin, Ph.D, and consultative examiner T.
Inman-Dundon, Ph.D, in assessing Plaintiff's RFC.  (Dkt. 7-8 at 21-22).  The ALJ gave
partial weight to all three opinions.  (*Id.*).

In assessing a disability claim, an ALJ must consider and weigh the various medical
opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give
> to any medical opinion in the record, regardless of its source, including: (i)
> the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the . . . physician's
> opinion; (iii) the consistency of the opinion with the record as a whole; (iv)
> whether the opinion is from a specialist; and (v) other factors brought to the
> Social Security Administration's attention that tend to support or contradict
> the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015)
(quotation and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to
apply the treating physician rule, under which a treating physician's opinion is entitled to
"controlling weight" when it is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in [the] case record[.]"  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the treating

physician rule, if the ALJ declines to afford controlling weight to a treating physician's

medical opinion, he or she "must consider various factors to determine how much weight

to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal

quotation marks omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the treating physician's
> opinion; (iii) the consistency of the opinion with the record as a whole;
> (iv) whether the opinion is from a specialist; and (v) other factors brought to
> the Social Security Administration's attention that tend to support or
> contradict the opinion.

*Id*.

An ALJ must "give good reasons in [his] notice of determination or decision for the

weight [he gives to the] treating source's medical opinion."  20 C.F.R. §§ 404.1527 (c)(2),

416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A

corollary to the treating physician rule is the so-called 'good reasons rule,' which is based

on the regulations specifying that 'the Commissioner "will always give good reasons"' for

the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those

good reasons must be supported by the evidence in the case record, and must be sufficiently

specific. . . ."  *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).  While

an ALJ "should not rely heavily on the findings of consultative physicians after a single

examination," *see Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013), "[a]n ALJ has

discretion to weigh the opinion of a consultative examiner and attribute the appropriate

weight based on his review of the entire record," *see Guerra v. Comm'r of Soc. Sec*., No.

1:16-CV-00991(MAT), 2018 WL 3751240, at *7 (W.D.N.Y. Aug. 7, 2018), *aff'd*, 778 F.

App'x 75 (2d Cir. 2019).

Plaintiff argues that the ALJ improperly assessed the opinions of Dr. Charles and Dr. Lin by not including a limitation for off-task and missed workday limitations in Plaintiff's RFC.  For the reasons that follow, the Court disagrees.

Dr. Charles, Plaintiff's primary care physician, submitted a medical source statement dated November 24, 2015, seven months after he began treating her.  (Dkt. 7-8 at 168-71).  In it, he noted her diagnoses of depressive disorder and anxiety, and that her overall prognosis was good with treatment.  (*Id.* at 168).  Dr. Charles opined that Plaintiff did not have performance limitations that precluded performance in several job areas, but found limitations precluding her performance for less than 10% of an eight-hour work day in job areas involving sustained concentration and memory, including work in proximity to others without distraction, completion of a workday without interruption from her psychologically-based symptoms, response to changes in the work setting, travel to unfamiliar places, and ability to deal with normal work stress.  (*Id.* at 169-70).  Dr. Charles opined that taking into consideration all of Plaintiff's mental and physical limitations, she would be off-task between 10% and 15% of the time, and would likely be absent from work two-to-three days per month as a result of her impairments and recurrent anxiety episodes. (*Id.* at 170).  Finally, Dr. Charles noted that Plaintiff had been offered a referral for mental health services but had declined them.  (*Id.*).  He stressed his belief that mental health services were important for Plaintiff since her concerns were mental-health related, and mental health providers would have a lot of input on how to best proceed.  (*Id.*).  He concluded that she would be able to maintain full time employment at any exertional level.

(*Id.* at 171).

Plaintiff argues that the ALJ relied upon his own lay opinion to reject the limitations Dr. Charles found concerning Plaintiff's need for off-task and missed workday limitations by not including any such limitations in Plaintiff's RFC. But the ALJ adequately explained his assessment of Dr. Charles' opinions. As an initial matter, the ALJ generally concurred with Dr. Charles' exertional and non-exertional limitations. But beyond that, in not giving Dr. Charles' remaining opinions greater weight, the ALJ explained his reasoning. With respect to Dr. Charles' opinion that Plaintiff would need to miss two-to-three days of work per month and be off-task 10-15% of the day, the ALJ concluded that: (1) Dr. Charles' opinions and his treatment notes do not support that limitation, (2) the form used by Dr. Charles is a checkbox form unsupported by explanation, and (3) Plaintiff's own work history belies the opinion.

With respect to the ALJ's first reason for giving the opinion partial weight, as noted, it is appropriate under the Regulations for the ALJ to consider the evidence underlying a medical opinion and its consistency with the physician's treatment notes and the record as a whole. The treatment records demonstrate that Plaintiff began seeing Dr. Charles in April of 2015. (Dkt. 7-7 at 265). At her first appointment, she advised that she had been without mental health medications for about a month. (*Id.* at 269). Dr. Charles found Plaintiff to be alert, cooperative, and not in distress, and prescribed medication for anxiety and depression. (*Id.* at 270-71). At appointments in April, July, and October of 2015, Plaintiff's psychological examinations were normal. (*Id.* at 285, 301; Dkt. 7-8 at 174). Plaintiff saw a nurse practitioner in Dr. Charles' office in September of 2015 and reported

that her anxiety was worsening due to her job, but that she had not taken Prozac in over a month, and her psychological exam was otherwise normal.  (Dkt. 7-7 at 312, 314).  At her November 2015 follow-up with Dr. Charles, he noted that she had brought a form from her lawyer to help her get disability.  (Dkt. 7-8 at 180).  She reported greater anxiety than usual causing her to miss work and advised that she had made emergency room visits for anxiety complaints.  (*Id.*).  Dr. Charles noted that Plaintiff had declined his referrals for mental health treatment.  (*Id.*).  Dr. Charles indicated that he believed Plaintiff would "benefit from seeing mental health" and advised her that there were "good treatment options for anxiety and depression that could help her remain functional and socially engaged" and "as such, the primary goal should not be to go on disability at this time, though depending on the circumstances it could come down to that in the future."  (*Id.* at 182).

Plaintiff's treatment records with Dr. Charles following the issuance of his medical source statement are largely consistent with those prior to that time and reflect mostly normal psychological exams and notations documenting Plaintiff's failure to seek mental health treatment or regularly take her medication.  (*See, e.g.*, Dkt. 7-14 at 69, 77, 129-130, 236).  These largely benign treatment records and lack of specific findings relating to a need to be off-task or miss work were an appropriate basis for the ALJ to conclude that Dr. Charles' treatment records did not support his opinion, rendering the opinion speculative. Further, the repeated documentation in Dr. Charles' records reflecting the failure by Plaintiff to seek mental health treatment are inconsistent with the argument that Plaintiff required greater limitations than those reflected in the RFC.  *See Nicholson v. Colvin*, No. 6:13-CV-1296 (FJS/TWD), 2015 WL 1643272, at *7 (N.D.N.Y. April 13, 2015) (ALJ

properly considered the plaintiff's failure to comply with medical treatment as a factor weighing against her credibility); *see also* SSR 16-3p, 2017 WL 5180304, at \*9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

Second, while not a reason alone to reject a medical opinion, the ALJ is entitled to consider that the portion of Dr. Charles' opinion indicating her need for time off work was a checkbox form with no explanation from Dr. Charles as a basis to support the opinion. *See, e.g., Dereu v. Saul*, No. 19-CV-0164L, 2020 WL 5250507 at \*3 (W.D.N.Y. Sep. 3, 2020) (While "an ALJ may not reject a medical opinion out of hand simply because it appears on a checkbox form, a lack of supportive clinical findings in any medical opinion— a deficiency to which checkbox forms are particularly vulnerable—is relevant to the ALJ's weighing of that opinion."); *Pollino v. Comm'r of Soc. Security*, 366 F. Supp. 3d 428, 435 (W.D.N.Y. 2019) (concluding the ALJ properly rejected checkbox portions of a doctor's opinion because there was no explanation for these findings and they were contradicted by the doctor's own assessment that the claimant had only mild or moderate limitations for mental functioning); *Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box"

form that counsel had provided and was "clearly contradicted by the contemporaneous treatment notes").

Finally, it was appropriate for the ALJ to consider Plaintiff's work history in discounting her testimony and assessing the weight given to Dr. Charles' opinion on her need to be off-task or miss work days. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir, 2008) (the plaintiff's work activity during the relevant period "support[ed] the ALJ's conclusion that [the plaintiff] had the residual functional capacity . . . to perform a full range of light work during the relevant periods"). Specifically, the ALJ noted that Plaintiff had earnings over the levels for substantial gainful activity in the fourth quarter of 2016, the second quarter of 2017, and the first, second, and third quarters of 2018. (Dkt. 7-9 at 22). Moreover, at the hearing, when asked if she sometimes missed work, Plaintiff herself testified that "it might happen like maybe once of twice out of every three months." (*Id.* at 72). Consideration of Plaintiff's work history was accordingly an appropriate basis to not give Dr. Charles' opinion greater weight.

Similarly, the Court rejects Plaintiff's challenge to the ALJ's assignment of partial weight to the opinion of Dr. Lin and her contention that Dr. Lin's opinion corroborated her need for limitations allowing off-task and missed workdays.

In 2015, Dr. Lin conducted a consultative psychiatric evaluation of Plaintiff. (Dkt. 7-7 at 21-25). Dr. Lin concluded that Plaintiff is able to follow and understand simple directions and instructions and perform simple tasks independently with no limitations.

(*Id.* at 24).  Dr. Lin opined that Plaintiff has moderate limitations in maintaining attention and concentration, and maintaining a schedule, but could learn new tasks with no limitations and perform complex tasks with supervision.  (*Id.*).  Finally, Dr. Lin opined that Plaintiff is mildly limited in relating with others and moderately to markedly limited in appropriately dealing with stress.  (*Id.*).  The ALJ gave several reasons for assigning only partial weight to Dr. Lin's opinions, including that Dr. Lin only saw Plaintiff once and was not a treating source.  (Dkt. 7-9 at 21-22).  The ALJ also found Dr. Lin's opinions inconsistent with Plaintiff's activities of daily living, treatment notes, and the more benign mental limitations opined by Dr. Charles, but did agree that some non-exertional limitations found by Dr. Lin due to Plaintiff's mental limitations were warranted.  (*Id.*).

As an initial matter, Dr. Lin did not specifically opine that Plaintiff would require missed work and off-task time and to that extent, the ALJ's RFC is not inconsistent with the opinion of Dr. Lin.  Further, similar to Dr. Charles, the ALJ provided an explanation for his legitimate reasons not to more fully credit the opinions of Dr. Lin.  As noted, inconsistency with the record as a whole is a sufficient reason not to fully credit a medical opinion, as is the nature of the relationship between the provider and patient.  To the extent that Plaintiff argues that Dr. Lin's opinions regarding Plaintiff's ability to maintain a regular schedule and tolerate stress were not accounted for in her RFC, the Court disagrees.  The RFC limited Plaintiff to simple, routine tasks with low-stress work, which he defined as work involving only occasional decision-making.  He further limited her to occasional interaction with co-workers and the general public.  These limitations were sufficient to account for the portions of the opinions of Dr. Lin that the ALJ credited and gave partial

- 14 -

weight.  *See Ridosh v. Berryhill*, 2018 WL 6171713, at *4 (W.D.N.Y. Nov. 26, 2018) (holding that RFC that limited plaintiff to occasional interaction with co-workers and the public, and the performance of simple, routine tasks, sufficiently accounted for stress limitations); *see also Gomez v. Comm'r of Soc. Sec.*, No. 18-CV-96-FPG, 2020 WL 1322565, at *4 (W.D.N.Y. Mar. 20, 2020) ("[C]ourts reviewing an ALJ's evaluation of stress-based limitations do not demand an exhaustive analysis of the issue.  So long as the decision reveals that the ALJ considered and accounted for stress limitations—even if not in the most explicit terms—remand is not warranted.").

In short, the ALJ provided adequate reasons to explain the weight given to Dr. Charles' and Dr. Lin's opinions and the Court concludes that substantial evidence supports that determination.  Accordingly, neither reversal nor remand is warranted.

**B.**     **The ALJ's Duty to Develop the Record**

Turning next to Plaintiff's argument that the ALJ had a duty to develop the record and obtain missing employment records and clarification from Plaintiff's treating doctors on whether she was able to work without time off-task or missing days, the Court is not persuaded.  An ALJ has a duty to develop the record where there are "gaps in the record," or "when the record serves as an inadequate basis on which to render a decision."  *Dunne v. Comm'r of Soc. Sec.*, 349 F. Supp. 3d 250, 258 (W.D.N.Y. 2018).  However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Id.* (quoting *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011)); *Reithel v. Comm'r of Soc. Sec.*, No. 6:17-CV-06209 EAW, 330 F.

Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he [ALJ] need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record.").

The Court concludes that the ALJ was not required to further develop the record in this case, because the evidence of record was "adequate to permit the ALJ to make a disability determination." *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010). The ALJ had adequate evidence in the record from which he could and did properly assess Plaintiff's RFC, which included: opinion evidence; Plaintiff's testimony; and Plaintiff's treatment records. In other words, even if there were portions of treatment records missing, there was abundant medical evidence in the record from which the ALJ could and did assess Plaintiff's RFC. *See Dunne*, 349 F. Supp. 3d at 259 (no duty to develop record where the record contained adequate evidence from which the ALJ assessed the plaintiff's RFC which included the plaintiff's treatment notes and four medical opinions).

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case. As such, the RFC assessment in this case is consistent with the record and is supported by substantial evidence. Accordingly, neither reversal nor remand is warranted.

## C.   Additional Evidence Submitted by Plaintiff Does Not Warrant Remand

A court may remand a case to the Commissioner to consider additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.

§ 405(g).  Evidence is considered "new" and "material" if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is "reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  If "the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded."  *Webster v. Colvin*, 215 F. Supp. 3d 237, 244 (W.D.N.Y. 2016).

Here, Plaintiff contends that a February 11, 2019 opinion from Dr. Charles and 2016 employment records warrant remand for further proceedings.  The Court disagrees.

First, while Dr. Charles' February 11, 2019 opinion may be new in the sense that it did not exist at the time the ALJ issued his decision, the 2019 opinion is largely consistent with his earlier opinion and arguably cumulative, calling into question whether it can be considered probative or establish a reasonable possibility that Plaintiff's application would have been decided differently.  *See, e.g., Olmo v. Saul*, No. 19-CIV-57(NSR)(JCM), 2019 WL 11553654, at *20 (S.D.N.Y. Dec. 13, 2019) (finding that while newly submitted medical records reflected different dates, "they contain very similar test results, findings, conclusions, and impressions" as reports considered by the ALJ and did not show a reasonable probability of changing the outcome), *report and recommendation adopted*, 2020 WL 7335312 (S.D.N.Y. Dec. 14, 2020); *Quintana v. Berryhill*, No. 1:18-CV-00561 (KHP), 2019 WL 1254663, at *15 (S.D.N.Y. Mar. 19, 2019) ("[C]ourts will not remand where the new evidence describes symptoms and conditions already contained in the record, relies on the same information previously considered by the ALJ or fails to show that the claimant's impairments were more severe than previously diagnosed during the

relevant time period."). The ALJ did not reject Dr. Charles' 2015 opinion based on its remoteness in time and thus, documentation as to the continuing nature of Plaintiff's alleged limitations is not material or probative.

Second, the 2016 employment records existed prior to the hearing before the ALJ and cannot be considered new. But equally importantly, the records are not of a probative nature that undercuts the substantial evidence supporting the ALJ's decision. Plaintiff testified to her employment history at the hearing and the employment records do not indicate that Plaintiff missed work solely because of her mental impairments or otherwise undermine the ALJ's determination. In other words, the employment records do not add enough as to make the ALJ's decision contrary to the weight of the evidence.

Plaintiff has failed to explain why the newly submitted evidence would require a different outcome and accordingly, she is not entitled to remand on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 18) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        February 16, 2021
              Rochester, New York